Argument not to exceed, 15 minutes per side. Mr. Priddy, you may proceed for the appellant whenever you're ready. Your Honors, before we begin this morning, I have the privilege and honor to present to the Court one of the students from the Federal Appellate Litigation Clinic of the University of Michigan Law School. We've already previously moved for his admission and participation in this oral argument on behalf of our client, Mr. Lonnie Donaldson. Thank you. The motion has been granted. Mr. Priddy, you may proceed. Thank you, Your Honor. May it please the Court, I am David Priddy, appearing on behalf of Lonnie Donaldson. Before I begin, I'd like to reserve three minutes of my time for rebuttal. On December 10, 2009, Lonnie Donaldson stood trial before the Ohio State Court, ready to resolve the charges against him. Instead of resolving his case, the state court judge declared a mistrial on her own motion, without manifest necessity to do so. To try Mr. Donaldson again at this point would subject him to double jeopardy in violation of his constitutional rights. First this morning, I'll discuss the bounds of the manifest necessity standard that the state trial court failed to meet in this case, and then I'll discuss two reasons why the trial court failed to meet this standard. The court made an irrational finding of ineffective assistance of counsel, first off, and secondly, the court did not adequately consider reasonable alternatives to mistrial. So first, both the irrational, ineffective assistance finding and the failure to consider options short of mistrial go to the larger issue that the state court lacked manifest necessity to go ahead with mistrial. If a trial court declares mistrial against the defendant's wishes and without manifest necessity to do so, the reviewing court must dismiss the charges against the defendant in order to prevent double jeopardy. And moreover, the trial judge must show sound discretion for her decision. And this discretion is rebutted if the trial court acts irrationally or irresponsibly in this decision, which necessarily triggers double jeopardy. This is what happened in this case. The judge failed to show sound discretion for her mistrial decision because she relied on an irrational, ineffective assistance analysis and did not recognize – did not – and it was based on recordings that she did not review. It was irrational and irresponsible. You had before her, though, the statements of the defense attorneys over a period of, what, two or three days? Yes. Yes, Your Honor. And the defense attorneys told her that they had discovered, contrary to a statement they had over the court to her, that their investigator had actually recorded a number of witnesses. And they had not – not only had they not reviewed those recordings, they did not know that they existed. That's true, Your Honor. But what came out later in the trial, and this is in the transcript as well, is that these recordings were actually reflected in written memoranda that was provided to the defense counsel. And there was no – Counsel, this is a death case. They are – when they know or when they discover that there are recordings, they're entitled to rely upon a synopsis of those by an investigator. They don't have any responsibility to listen to them themselves. Your Honor, certainly, this breach of communication was a mistake by a defense counsel. But to say that it reached the point of ineffective assistance goes beyond the facts of the case. The judges – I'm sorry. How about we assume that there is merely a mistake? Then you've got a better argument about does not manifest necessity. But you would have to concede, would you not, that things went rapidly downhill for these lawyers? They make a representation to the court that the recording was the government's, and the government failed to fulfill a Brady allegation. Wrong. They find out they're their recordings, and they say they're inconsistent statements. Wrong. They say – and then they refuse to give them to the court. So you say they should – the court should have reviewed them in camera. They were concerned there was privileged material on them. They wouldn't give them to the court. So how is that irrational behavior on the part of the judge? Your Honor, first off, all of the differences in the accounts that you are recounting is consistent with the trial attorneys receiving these recordings and then gaining more information about the recordings as they receive it. It's not – there's no difference in what they were saying from the beginning to the end. It's just – this is the information that they were – that was uncovered on the tapes. But doesn't that suggest a lack of preparation? Well, after the trial has started, the lawyers are now finding new information. The trial has already started. Yes. So the judge is getting changing explanations because she's getting different information. Isn't that communicating to her that there's inadequate preparation for the trial? I don't think so, Your Honor. Like I said, it all goes back to this one point. And the adequate preparation that they made before the trial is reflected in the memoranda that they received. They already had all this information that was in their trial strategy. But they did not understand that there were recordings. They had it. That's true. They did not understand that there were recordings. Yes, Your Honor. So they were going to accept the interpretation of an investigator as to what people say instead of verifying that themselves. Yes, Your Honor. And isn't it also true, and just correct me if I'm factually wrong here, that once they discovered these tapes, then they became concerned that their own clients had been interviewed and recorded, which would be an obvious problem to give that to the court or to the government. But didn't that also then turn out to not be the case? That's true. Mr. Donaldson was not on these tapes. And you referred to their objective evidence. So what I'm trying to figure out from the trial judge's standpoint is you see all this unfolding before you in a pretty short period of time. Depending on what the standard is, why is that not sufficient to cast serious doubt on the qualifications of these lawyers to continue, particularly given that it's a death case? Because, Your Honor, the standard that we have for ineffective assistance, and I realize that it's for post-judgment, is the Strickland v. Washington standard. And this suggests that there has to be a prejudice on the case posed by this error. That would mean that you could never declare a mistrial, so to speak, because obviously you can't determine what the prejudice would be over the course of the trial because the whole point is that the trial is not going to continue. I don't think so, Your Honor. I think that we can stipulate – she could have figured out whether it was ineffective to not review these tapes by simply listening to the tapes herself. In this way, she could not take account of all the information in front of her that would have allowed her to make a sound decision whether there was manifest necessity for mistrial. But interestingly enough, I hear the government is the one that's saying that they wanted her to listen to the tapes. Probably obvious reasons for that. And defense counsel says, no, I don't want you to listen to the tapes. So basically, to do what you want, the court would have had to have ordered them to turn over the tapes over their objection and then listen to the tapes to try to determine inconsistencies, which would be almost impossible for the judge to determine because the judge doesn't know what the evidence is going to show. So how is the judge going to know if there are inconsistencies? Your Honor, the only way that this would have affected their trial strategy – we're only on the third day of trial in the homicide case. And only two of the witnesses on the tapes had testified. Now, she could have reviewed the testimony from the witnesses at trial and compared this with the testimony on the tapes to determine whether there was any differences that would have had any effect on the trial going forward. So in that way – and given that there have only been a couple of witnesses, how would the judge have known whether differences, subtle or otherwise, between the tapes and the testimony were significant in terms of the evidence that was to come in the trial? Your Honor, in other words, there could be inconsistencies that are significant in light of the rest of the evidence, and there could be inconsistencies that are completely trivial in light of the rest of the evidence. Is that correct? Coming forward after this point in time? Yes. So in light of that, those two very distinct possibilities – different possibilities – how would the judge be in a position to make the assessment you want her to make given that the judge has no idea what the remaining evidence is going to show in order to inform her as to whether the consistency is assuming they were there or significant? Because, Your Honor, the judge could have determined the inconsistencies before this, and then the – and anything after this point in the trial could have been – the attorneys could have changed their trial strategy and taken into account these tapes if there was any inconsistency on the tapes. I think that points to one of the difficulties. Locating an inconsistency, I think, is doable. But I think what a judge should actually do, which is suggesting the judge should have to know what the defense strategy is, what evidence the defense had in its mind, and determine whether there was some prejudice to that result. And I don't know how that could have ever happened. I cannot imagine a defense attorney sharing with the judge what their entire strategy is, what evidence they had to support that strategy. We've not talked about the possibility of impeachment. There might be something on the tape that's not inconsistent that leads to impeachment. I just don't understand how we can put a judge in a position of trying to make a decision at that time that this is prejudicial in the terms that you are relating. Your Honor, like I've said before, the judge could have gone over these – the prior testimony. What if the judge hears something on the tape that's particularly aggravating that for whatever reason wouldn't be admissible in the trial? Does your client then go and say they got a fair trial if the judge then weighs the aggravating, mitigating evidence and finds the aggravating evidence outweighs the mitigating evidence? Your Honor, that – the judge is required to only take into account the evidence that was properly – that was not prejudicial. And so to say that this would be a problem on the mitigating phase goes against her duties to the state of Ohio. I see that my time is almost up. The question here goes to whether the evidence shows that the attorneys were actually ineffective. And based on their test – their statements on the transcripts, we can see that there was no inconsistencies between the reported evidence and the evidence on the memorandum. And so that reason – there was no reason to declare ineffective assistance to counsel at all. And moreover, the shortness of these tapes perverts the judge's understanding that this would be an undue burden to review the tapes. There was simply no reason to declare mistrial in this case because there was no difference in these recordings. So just one other thing. Your argument is premised on the court having erred by finding the attorneys to be ineffective, strictly or otherwise, and therefore granting the mistrial. Yes. The court's order says the court makes no finding as to whether the defendant's counsel's assistance was actually ineffective. Yes, Your Honor. And that brings further question as to – Isn't that the exact opposite of what you just said? Well, that's the exact opposite of what the judge just said. She declared them to be ineffective and then ultimately decided that they were not ineffective but still declared mistrial anyway. So that goes against manifest necessity by showing that there was no actual reason for declaring mistrial in this case. All right. Thank you. Let's see what time's up. Thank you, Your Honor. Thank you. Good morning. May it please the court. My name is Daniel Band. I'm an assistant prosecutor from Cuyahoga County representing the athlete in this case. Seated with me at counsel table is Ms. Catherine Mullen who is also from the prosecutor's office. How do you respond to Judge McGee's question regarding the failure of the court to find that counsel was ineffective? Your Honor, and I think this – it can be easily resolved. I think the judge, the state trial court judge, properly found in this case that Strickland was a standard that could only be applied post-trial. Therefore, the issue, the second prong of Strickland, the prejudice prong, could not easily be ascertained because there was no result in this case. But I think the court's rule – In fact, early on, as far as what Mr. Puri was alluding to, maybe this is a subtle difference, but didn't the court conclude that their representation had been deficient as opposed to using Strickland words to say that they had been ineffective, which requires cause and prejudice? Yes, Your Honor. Deficient performance and prejudice. Yes, Your Honor. The court – and I think there is, and we can make the distinction between prejudice under Strickland and the mere fact that there was a lot on the record evidencing the deficiencies of counsel in this case. The deficiency in this case, as this court is well aware, were recordings that were discovered on the sixth day of trial. And the issues began before the recordings were discovered. I think the magistrate's reporting recommendation outlined the facts very well.  And we know from the facts that on December 3rd, there were some discussions about additional witness statements. At the time, there was a discussion about statements made by a witness named Shannon Brue. They didn't know if there was a recording or any memoranda from that witness. At the time they indicated to the court, the only other statements that they were aware of belonged to one witness named DeCarlo Lavender. That brings us into the next few days of events, in which at one point, counsel talks to one of the witnesses. The witness probably truthfully tells them that they thought, you know, I thought I talked to a voice investigator and he recorded the statement. And as record shows, we knew that not to be the practice. That was known not to be the practice of the Collegian Voice Department. Ultimately, they conceded it was more likely that it was their own investigator who took that recorded statement. And over the next course of days, that is when the tapes are discovered. And to say that they had these memoranda, I think we have to look at all the facts. I think that's what case law tells us to do in terms of determining whether or not the manifest injustice exists. We look at everything. We look at all those statements that were made to the court through the course of those days. And we find that there are serious concerns about whether or not they are prepared. And to call this a simple breakdown of communication, I don't see how this can be described as a simple breakdown of communication. Not when these tapes existed for 22 months prior to the beginning of trial, and they were in the office of the investigator, whose office was right next door to the defense attorney. And so I think these facts strongly show, and they've strongly alerted the judge to exactly what the judge was concerned about in this case. And again, you know... What exactly was the court concerned about? The court was concerned. And I think the exact words I'm paraphrasing are that we had counsel appointed in a capital murder case who began trial without knowing the fruits of their own investigation. They simply began trial without knowing everything they had. And there has been some argument that counsel at one point says, Well, we have the memoranda. We knew what was there. But I think that's rebutted by not only their statements made days before this had occurred, but it's also rebutted by their own earlier statement that they did not want to defer to this type of investigator. And I do think there is a difference between listening to the tapes, understanding the tapes, maybe going over it several times, picking up on things that you've previously maybe not caught on to. So what role does Strickland play? Strickland plays a role, somewhat of a guidepost, I would say. A guidepost as the overarching principle as to why the defendant's right to have his trial by a particular tribunal can be outweighed. I think the right to have adequate representation, effective representation, can outweigh any right Mr. Donaldson may have to have. Manifest necessity always has to have hands on, so to speak. If the manifest necessity of the problem before the court is evidence, then you look at the evidence law to determine whether there was a manifest necessity to declare a mistrial. Well here, we're in the Sixth Amendment, right? So we're looking to Strickland. I understand your argument that you cannot determine the future prejudice. I think that's obvious, but isn't it the core Strickland rule that justice has to be reliable, that the court has to be able to look at the past conduct of counsel and determine its propriety, and look at the future conduct and decide whether, when you look at both of those things, we will have what Strickland would call a reliable system, a reliable, just trial. And so the standard is, did this court find, based on what these attorneys had done, that if they were not reliable, the proceeding itself was not reliable to provide a justice position in this case? Would that be the standard? Yes, and I agree. And that's why I call it a guidepost, because there is the public interest in, not only for the defendant to have his one trial, one fair trial, and I stress the word fair trial, but the prosecution also has a right to one complete fair opportunity to prosecute the case. And the public has an overarching interest in seeing that any verdict that comes from the jury is fair, just, and is in no way affected by counsel's utter lack to know what exactly they had. I'm just struggling with the standard, and it seems to me that you're both wrong. Strickland is involved. It's just that the Strickland prejudice bond is unassertainable at this position. So what you have, though, is the core guidepost for Strickland, and the real bottom-line question is, did this court appropriately decide that the outcome of the proceedings, where they were at that point, were not reliable to render justice? She said they were not. So she didn't need to find inadequate counsel in that circumstance, is that correct? Yes, she did not have to find inadequate counsel in that sense of, Strickland, I have to show prejudice. But she did have to find that there is this overarching reason, this public interest reason, why a mistrial had to be declared. And that, again, that is because whether he was receiving a fair trial, or it's just the fact that counsel was unprepared in additional reasons, that she started having serious doubts about the fairness of the trial. Mr. Vann, I'd like to follow on from Judge Strang's question. I'm not familiar with Ohio court proceedings, and I'm assuming there's some type of post-conviction procedure available. Would the jury have had in mind that if the case had received a verdict and the jury had found the defendant guilty, that she might be faced with a motion to set aside the verdict off a new trial based upon deficiencies of counsel? And if so, with her discomfort at what she was hearing, might have persuaded her that the likelihood was that she wouldn't have to set aside the case. It would have made more practical sense to do it now, rather than having everybody go through the burden of trial and starting all over again. Yes, Your Honor. And just as under Ohio law we have a post-conviction statute under certain circumstances, I mean, that allows counsel, the defendant, to raise certain issues with the trial court. And I think... And would she have been the one? Would the motion have been filed with her? Yes, Your Honor. The motion would have been filed. I always say in practice, it was kind of a caveat, yes, it would have been filed with her. But that all goes back to the judge would have had to let the jury go to verdict, and the concern was already there, that any guilty verdict returned by the jury would now be tainted. And the concern was that it would truly be subject to attack. And there's probably a strong likelihood that it would have been reversed, had it been a guilty verdict. I just wonder, counsel, whether we're trying to put too fine a point to this, because our decision in Ross says that our obligation is to determine whether the trial judge acted irrationally or irresponsibly versus exercising sound discretion. And that's a fairly favorable standard for the trial judge. Essentially, if that's what we're applying, you'd have to say that the judge's actions in this case were irrational or irresponsible. And that's a different point than which problems it does strictly apply, which problems it strictly won't apply. Yes, Your Honor, and I agree. I agree with the decision in Ross in that the court's decision here, we're not looking at this sensible lens of a total de novo review to see if this was proper, but we have to, and I make all these points, just bring this court to the position where the judge was. This is what was going on in the mind of the judge. This was what the judge was considering. This was the basis for her decision. And to say that the judge lacked inadequate discretion or inadequate reasons for declaring a misdemeanor, I don't see how that can be said based on the record here. The judge heard the positions of both sides. At one point after counsel claimed to have indicated that they listened to the tapes and they thought that there was nothing of consequence on it, there was discussions on what to do next. Gave the parties overnight to find research, find case law. The prosecution filed a memoranda. Defense counsel filed nothing. They only maintained that there was a movement. The prosecution filed is contrary to your argument now. Well, to a degree, yes. And I would admit I do acknowledge what the memorandum says, and I don't think we're bound by that. And I think the reason why— So you disavow the argument that was made then? Not necessarily, Your Honor. I think what the state wanted to impress upon her was that the judge had to consider some alternative, that the judge had to consider all other things. Well, if I can make a suggestion, I believe when interviewing witnesses, you want the judge to conduct a voir dire of witnesses. Now, what would that have been? You know, again, I think at the time there was only the— Would the lawyers have been present? Or the board of members and chambers? I think what was intended was a voir dire, probably with counsel present, and I think— Would the lawyers have been given a chance to ask questions? That I don't know. I would imagine that the court would have allowed both sides to— But I should be aware of any trial while the trial is going on. Correct. That may have— They would have made arguments also about what the witnesses actually said, the lawyers? Yes, Your Honor. And, again, those are all reasons— Maybe five reasons. Correct. It may— I'll go to what goes to why the judge felt that so many steps the judge couldn't reasonably do. It was untenable. So, you know, and the basic thrust was, you know, the state did want the court to consider some alternatives. Again, the most— The one that could have easily been done but defense counsel opposed to was having the court listen to the tapes. And, again, counsel wouldn't let the court do that, and there's no indication in the record that the two defense attorneys would have preferred to hand over the tapes or over having a missed trial. There's really no indication that that's what the defense attorneys— would have liked to see. Again, based on that, I don't think the judge's decision could be viewed as unreasonable in any way. The decision was reasonable. Thank you. Yes. I'm going to ask that the district court's decision be affirmed. Mr. Brady, anything further? Yes, Your Honor. Just a few responses. First up, I agreed with my colleague, Mr. Vann, that the court needed to take into account all of the facts. And for this, the court needed to determine using both the facts on the record and the state's own statements regarding what needed to take place at this moment. The state did not believe that there was a need for a missed trial, and that was repeated both by trial counsel and appellate advisors of the state. Defense counsel did not think there needed to be a missed trial, and yet the judge goes and declares a missed trial against all the party's wishes. And the objectings by defense counsel regarding handing over the tapes, these objections came up before the judge even brought up the idea of missed trial. At that point, the defense counsel believed this was just a discovery issue that they were dealing with, and they thought that since this was possibly privileged information, that they shouldn't give it over. So to get a practical decision, a practical determination of whether manifest necessity is present, the judge would have had to listen to all the party's arguments and take into account all the information in question, which included the tapes at issue. And since she did not do that, we cannot determine whether the counsel was ineffective and therefore whether manifest necessity was present. Could she have determined that she believed the proceeding that they were in the midst of at that point could not render a just and reliable result? I believe that she could have had she listened to these tapes or had defense counsel indicated that there was anything different on the tapes that would have led her to question their effectiveness. I think that Judge Strange's point— If you think about what she actually said, she said that by knowing that defendant's counsel's representation has been deficient, that's the first part. And let's assume for our discussion that that's the first problem of the statement. She then goes on to say, and by feeling compelled to investigate whether counsel's assistance was ineffective. And she goes on to say the court finds. So she's clearly uncomfortable with having been put in an investigatory role in the middle of this trial, and I would assume that means not knowing whether there are other things that counsel failed to do. Is that an unfair way to read this? I think that we can't decipher that based on the facts. We have this one group of tapes that the defense counsel brought up and did not review. And so based on— So your position is she should have been compelled to undertake a thorough investigation of counsel's performance on these matters, the tapes, and anything else, before the trial then continued. No, Your Honor. I think—I'm sorry. I think my time is up. I think that the tapes themselves were the only evidence at issue, and so that should have been her—what she had basically said on her part. And since my time is up, for these reasons, I ask that this court grant Mr. Donaldson's petition for habeas code. All right. Thank you, counsel. The case will be submitted. That completes—